**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

XYNERGY HEALTHCARE CAPITAL II LLC,

   Plaintiff,

v.

MUNICIPALITY OF SAN JUAN, et al.

   Defendants.

CIVIL NO.: 18-1208 (MEL)

**OPINION AND ORDER**

Xynergy Healthcare Capital II LLC ("Xynergy") filed an amended complaint against GEODATAPR International, Inc. ("Geodata") and the Municipality of San Juan ("the Municipality") on August 26, 2018. ECF No. 20. The court granted leave to amend the complaint on March 1, 2019. ECF No. 100. Geodata answered the complaint and filed a counterclaim on March 25, 2019, seeking declaratory judgment, injunctive relief, and damages for contractual deceit and breach of fiduciary duties due to Xynergy's alleged failed to comply with 14 L.P.R.A. § 3801, 7 L.P.R.A. § 1073 and 7 L.P.R.A. § 3087. ECF No. 105. Geodata also seeks damages for breach of contract. Id. Pending before the court is Xynergy's motion to dismiss Geodata's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"). ECF No. 121. Geodata has filed a response in opposition. ECF No. 124.

### I.   MOTION TO DISMISS STANDARD UNDER RULE 12(B)(6)

When considering a motion to dismiss under Rule 12(b)(6), the court must limit its focus to the allegations of the counterclaim. Litton Indus., Inc. v. Colón, 587 F.2d 70, 74 (1st Cir. 1978). Specifically, the inquiry should be "whether a liberal reading of [the counterclaim] can reasonably admit of a claim . . . ." Id. An evaluation of a motion to dismiss under Rule 12(b)(6) requires the

court to "accept as true 'all well-pleaded factual averments and indulg[e] all reasonable inferences in the [counterclaimant's] favor.'" Doyle v. Hasbro, Inc., 103 F.3d 186, 190 (1st Cir. 1996) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)). Dismissal under Rule 12(b)(6) is appropriate only if the facts alleged, taken as true, do not warrant recovery. Aulson, 83 F.3d at 3. In order to survive a motion to dismiss, the counterclaimant must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988). Although all inferences must be made in the counterclaimant's favor, the court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." Aulson, 83 F.3d at 3.

The Supreme Court held in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) that in order to survive a motion to dismiss under Rule 12(b)(6), a counterclaim must allege "a plausible entitlement to relief." Rodríguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Twombly, 550 U.S. at 559). "While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [counterclaimants'] claims across the line from conceivable to plausible.' Accordingly, in order to avoid dismissal, the [counterclaimant] must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" Torres v. Bella Vista Hosp., Inc., 523 F. Supp. 2d 123, 133 (D.P.R. 2007) (quoting Twombly, 550 U.S. at 555, 570) (citation omitted). Although Twombly was decided in the antitrust context, the Supreme Court has held that the standard expounded in that decision applies to "all civil actions." Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009).

## II. LEGAL ANALYSIS

Xynergy raises four arguments as to why the motion to dismiss should be granted. First, it argues that Geodata's claim of contractual deceit (known as "dolo" under Puerto Rico law) is time-barred. Second, it argues that it was not required to obtain a certificate of authorization to do business in Puerto Rico under 14 L.P.R.A. § 3801. Third, it argues that the requirements of 7 L.P.R.A. § 1073 and 7 L.P.R.A. § 3087 are not applicable to its contract with Geodata.

Under Puerto Rico law, "[a] contract is voidable where a party is the victim of . . . deceit when contracting." In re J. Gus Lallande, Inc., 167 B.R. 742, 745 (Bankr. D.P.R. 1994). The statute of limitations for bringing an action to nullify a contract is four years. 31 L.P.R.A. § 3512. In cases of deceit ("dolo"), this term commences to run from the date of the consummation of the contract. Id. According to the counterclaim, Geodata entered into a contract with Xynergy on February 25, 2014. ECF No. 105, at 19. However, Geodata's original counterclaim was not filed until August 7, 2018. ECF No. 14. Therefore, Geodata's claim of contractual deceit ("dolo") is time-barred.

Geodata argues in its response that it is not raising a claim of contractual deceit, but rather a claim that the contract is "nonexistent" or "wholly void." In re J. Gus Lallande, Inc., 167 B.R. 742, 745 (Bankr. D.P.R. 1994). This is important because "[u]nlike voidable contracts, void contracts may not be ratified or validated by a lapse of time." Id. However, in its counterclaim, Geodata provides an extensive summary of the law on contractual deceit. Specifically, it states that under Puerto Rico contract law, "fraud which affects a contracting party is commonly referred to as 'dolo' or deceit." ECF No. 105, at 25. It explains that "there is deceit when by words or insidious machinations on the part of the contracting parties the other is induced to execute a

contract which without them he would not have made." Id. Finally, it argues that its contract with Xynergy "is null and void because its consent was procured through deceit or 'dolo.'" Id.

Geodata does describe its contract with Xynergy as "null ab initio," raising the specter of an argument that the contract is nonexistent or wholly void. Id. at 26. However, in the same sentence, Geodata states that Xynergy made "false representations . . . to induce [it] to enter into [the] agreement," which is a clear reference to contractual deceit. Id. Thus, even a liberal reading of the counterclaim leads to the conclusion that Geodata is raising a time-barred claim of contractual deceit.

Even if this claim had been filed in a timely manner, it still could not hold water. Geodata argues that Xynergy deceived it due to Xynergy's alleged failure to comply with 14 L.P.R.A. § 3801. This law requires foreign corporations to obtain a certificate of authorization from the Department of State before doing business in Puerto Rico. Any foreign corporation that has been doing business in Puerto Rico without the required authorization may not bring suit in Puerto Rico's courts. 14 L.P.R.A. § 3803. However, the General Corporations Law provides a list of activities which do not constitute doing business in Puerto Rico. 14 L.P.R.A. § 3805(a). These activities include creating or acquiring debts, mortgages, or real property securities. Id.

The contract between Xynergy and Geodata was for the sale of accounts receivable. ECF No. 105, at 19. Xynergy argues that its purchase of accounts receivable from Geodata did not constitute doing business in Puerto Rico because it was "acquiring the debts owed to Geodata by its clients." ECF No. 121, at 14. Regardless of whether purchasing accounts receivable is considered acquiring a debt under 14 L.P.R.A. § 3805(a), "[t]he fact that a foreign corporation ha[s] failed to obtain an authorization to do business in the Commonwealth shall not impair the validity of any contract or action of the foreign corporation nor impede it from defending itself in

any proceeding in the Commonwealth." 14 L.P.R.A. § 3803. Thus, even if Xynergy was required to obtain authorization to purchase accounts receivable, Geodata still could not base an action to nullify its contract with Xynergy on Xynergy's failure to do so.

Geodata fares no better by grounding its claim for deceit ("dolo") in 7 L.P.R.A. § 1073. This statute provides that no person may engage in the financial intermediation business without first obtaining a license issued by the Commissioner of Financial Institutions of Puerto Rico. The financial intermediation business is defined as "[o]ffering services or engaging in financial planning, consulting or advisory activities, granting of loans, loan and financing brokerage activities other than mortgage loans on residential real estate." 7 L.P.R.A. § 1071.

Geodata argues that its contract with Xynergy was in fact a loan and therefore falls within the scope of this definition. Courts consider a common set of elements in determining whether a particular transaction constitutes a sale or a loan. In re Burm, 554 B.R. 5, 17 (Bankr. D. Mass. 2016). These factors include 1) whether the transaction is non-recourse, 2) whether the seller's creditors are notified that payments are to be made to the buyer of the accounts and/or whether the buyer takes responsibility for account collection, and 3) the intent of the parties. Id.

In the case at bar, a reasonable reading of the counterclaim's allegations within the context of these factors leads to a determination that the contract between Geodata and Xynergy was for the sale of accounts receivable. First, the parties clearly intended the contract to be for the sale of accounts receivable. The contract states that Geodata "shall treat transfers to [Xynergy] of Purchased Accounts hereunder as a sale for all purposes." ECF No. 1-5, at 10. It describes Geodata and Xynergy's "mutual intent . . . that the purchase of any Purchased Account is, as intended by the parties to be a true sale." Id. at 12. And it emphasizes that the parties "hereunder exclusively and solely engage in the purchase and sale of Accounts, and that none of these

5

transactions constitute a lending arrangement or a loan." Id. at 16. Second, the contract states that Geodata "shall take all necessary and appropriate steps, including the sending of a notice to Third Party Obligors of Non-Governmental Accounts . . . to assure that all proceeds paid with respect to all Non-Governmental Accounts . . . be sent exclusively to the Purchaser Lockbox."[1] Id. at 4. Thus, per the terms of the contract, Geodata was to instruct the Municipality to send payments directly to Xynergy. Third, Geodata has not cited to any specific part of the contract indicating that it was non-recourse. For example, Geodata does not argue that it had to warrant the creditworthiness of the account debtors, that Xynergy held a reserve from the purchase price to protect it against nonpaying accounts, or that Geodata was required to repurchase delinquent accounts. See In re Siskey Hauling Co., Inc., 456 B.R. 597, 607 (Bankr. N.D. Ga. 2011) (citing Major's Furniture Mart, Inc. v. Castle Credit Corp., Inc., 602 F.2d 538, 544–45 (3d Cir.1979)).

Lastly, the Commissioner of Financial Institutions may issue a license to operate an international financial institution to an applicant. 7 L.P.R.A. § 3087. Upon receipt of a license, an international financial institution may engage in a list of twenty-two transactions described in 7 L.P.R.A. § 3091. Geodata does not specify which of these twenty-two transactions Xynergy engaged in without a license.

### III.   CONCLUSION

For the foregoing reasons, Xynergy's motion to dismiss Geodata's counterclaim pursuant to Rule 12(b)(6) is GRANTED IN PART and DENIED IN PART. Geodata's claim for deceit ("dolo") is DISMISSED WITH PREJUDICE. Xynergy's motion to dismiss Geodata's claims for declaratory judgment, injunctive relief, and breach of fiduciary duties is also GRANTED because

---

[1] The contract also has a clause instructing Geodata to send a notice to Third Party Obligors of Governmental Accounts. ECF No. 1-5, at 4.

they rely on the same faulty arguments as Geodata's claim for deceit ("dolo").[2] These claims are hereby DISMISSED WITH PREJUDICE. However, Xynergy's motion to dismiss Geodata's claim for breach of contract is DENIED due to Xynergy's failure to raise any arguments in support of its request.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 18th day of September, 2019.

s/Marcos E. López  
U.S. Magistrate Judge

---

[2] Even if Geodata's claim for breach of fiduciary duties did not rely on faulty arguments, the contract between Geodata and Xynergy states that Geodata "acknowledges that there is no, and it will not seek or attempt to establish any, fiduciary relationship between [Xynergy] and [Geodata] and [Geodata] waives any right to assert, now or in the future, the existence or creation of any fiduciary relationship between [Xynergy] and [Geodata] in any action or proceeding." ECF No. 1-5, at 11.