## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

XYNERGY HEALTHCARE CAPITAL II
LLC,

        Plaintiff,

           v.                           CIVIL NO.: 18-1208 (MEL)

MUNICIPALITY OF SAN JUAN, et al.

        Defendants.

## OPINION AND ORDER

### I.    Procedural Background

Xynergy Healthcare Capital II LLC ("Xynergy") filed an amended complaint against the Municipality of San Juan ("the Municipality" or "MSJ") and GEODATAPR International, Inc. ("Geodata") on August 26, 2018. ECF No. 20. In the amended complaint, Xynergy alleges that Geodata is liable to Xynergy for breach of contract damages under the Healthcare Receivables Master Purchase and Sale Agreement ("Master Agreement"). Id. at 15-16. It is also alleged by Xynergy that it has a valid and enforceable security interest over all assets of Geodata. Id. at 14. Additionally, Xynergy seeks a declaratory judgment that the Municipality and Geodata are jointly and severally liable for certain unpaid payment obligations under the Master Agreement and Chapter 9 of Title 19, Annotated Laws of Puerto Rico, Section 2211, et. seq. ("the Commercial Transactions Act"). Id. at 16.

Geodata answered the complaint and filed a counterclaim on March 25, 2019, seeking declaratory judgment, injunctive relief, and damages for contractual deceit and breach of fiduciary duties. ECF No. 105, at 22-28. Geodata also seeks damages for breach of contract. Id.

On August 1, 2019, Xynergy filed a motion to dismiss Geodata's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 121. Xynergy's motion to dismiss was granted in part and denied in part on September 18, 2019. ECF No. 135. The court dismissed Geodata's claim of contractual deceit ("dolo") because it was time-barred. Id. at 3-4, 6. Even assuming that Geodata's dolo claim was not time barred, the court proceeded to determine that the contract between Xynergy and Geodata was for the sale of accounts receivable and that Xynergy did not require a license from the Office of the Commissioner of Financial Institutions of Puerto Rico ("OCIF"). Id. at 3-7. Thus, Geodata's claims for declaratory judgment, injunctive relief, and breach of fiduciary duties were also dismissed with prejudice because they relied on the same faulty arguments as Geodata's dolo claim. Id. However, Xynergy's motion to dismiss Geodata's breach of contract counterclaim was denied due to Xynergy's failure to raise any arguments in support of its request. Id.

Pending before the court is Geodata's motion for summary judgment against Xynergy on the counterclaim. ECF No. 144. Geodata alleges, among other allegations, that its dolo claim is not time barred and it is entitled to "all intended consideration that was retained by Xynergy in the amount of approximately $1,984,000.00." Id. at 24-25. Xynergy subsequently filed a response in opposition. ECF No. 150.

## II.     Standard of Review

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992) (citations omitted). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if

the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation." Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, the party cannot merely "rely on an absence of competent evidence, but must affirmatively point to specific facts [in the record] that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995) (citation omitted). The party need not, however, "rely only on uncontradicted evidence . . . . So long as the [party]'s evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original) (citation omitted).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115. There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and

3

likelihood." <u>Greenburg v. P. R. Mar. Shipping Auth.</u>, 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

## III.    Uncontested Material Facts[1]

Geodata is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico with its principal place of business in San Juan, Puerto Rico. ECF No. 144-1, at 1, ¶ 1; ECF No. 150-1, at 1, ¶ 1. Xynergy is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business in Boca Raton, Florida. ECF No. 144-1, at 1, ¶ 2; ECF No. 150-1, at 1, ¶ 2. Xynergy does not have a certificate of authorization from the Puerto Rico Department of State to do business in Puerto Rico as defined by Act No. 164 of 2009, known as the 'General Corporations Act', P.R. Laws Ann. Tit. 14 §§ 3501-4084, and has no resident agent or physical address for commercial offices in Puerto Rico. ECF No. 144-4, at 1-2, ¶ 3; ECF No. 144-5, at 2, ¶¶ 8, 11, 12; ECF No. 144-1, at 2, ¶ 10; ECF No. 150-1, at 2, ¶ 10. Mr. Alejandro Nathan ("Mr. Nathan") is the President of Xynergy. ECF No. 144-1, at 1, ¶ 4; ECF No. 150-1, at 2, ¶ 4.

Xynergy is not registered before OCIF pursuant to the Act No. 214 of October 14, 1995, as amended, Title 7, Annotated Laws of Puerto Rico, Section 1071, et seq, (the "Act to Regulate the Financial Intermediation Business"). ECF No. 144-1, at 2, ¶ 8; ECF No. 150-1, at 2, ¶ 8. Mr. Nathan is also not registered before OCIF pursuant to the Act to Regulate the Financial Intermediation Business. ECF No. 144-1, at 2 ¶ 9; ECF No. 150-1, at 2, ¶ 9. Mr. Nathan is not

---

[1] Local Rule 56(e) provides that "[f]acts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted."

registered, authorized, or named as a representative through any judicial entity, with the

Commonwealth of Puerto Rico Department of State as doing business in Puerto Rico. ECF No.

144-1, at 2, ¶¶ 11; ECF No. 150-1, at 2, ¶ 11.

On May 6, 2013, Mr. Nathan filed a Certificate of Incorporation with the Commonwealth

of Puerto Rico Department of State for a corporation named Xynergy of Puerto Rico, Inc. ECF

No. 144-1, at 2, ¶ 5; ECF No. 150-1, at 2, ¶ 5. On February 9, 2018, Xynergy of Puerto Rico,

Inc.'s charter was effectively canceled for failure to comply with charter obligations to file

annual reports or pay annual fees, as applicable, for certain consecutive years. ECF No. 144-1, at

2, ¶ 6; ECF No. 150-1, at 2, ¶ 6.

Xynergy's business is promoted as if they are a nationwide financial services company,

providing customized medical accounts receivable finance programs for the healthcare industry.

ECF No. 144-1, at 3, ¶ 14; ECF No. 150-1, at 3, ¶ 14. Geodata provides outsourced billing and

collections of claims to health insurance plans for medical care to patients, and related ancillary

services rendered. ECF No. 144-1, at 3, ¶ 17; ECF No. 150-1, at 4, ¶ 17.

Starting in 2014, Geodata entered into several agreements with the Municipality to

perform outsourced services in connection with the medical billing of services provided by the

Municipality. ECF No. 144-1, at 3, ¶ 18; ECF No. 150-1, at 4, ¶ 18. The most recent agreement

between Geodata and the Municipality for the foregoing services is dated as of July 12, 2017 and

identified with contract number 2018-000682. ECF No. 144-1, at 4, ¶ 19; ECF No. 150-1, at 4,

¶ 19. On or about the commencement of 2014, Geodata entered into a procedure and evaluation

of business to secure certain financial services agreement with Xynergy, in which Geodata

offered to sell service invoices and related account receivables to Xynergy. ECF No. 144-1, at 4,

¶ 20; ECF No. 150-1, at 4, ¶ 20.

On February 20, 2014, Xynergy provided Geodata with the Notice of Perpetual Assignment and Change of Payee ("Notice of Assignment") as a condition precedent to contracting with Xynergy. ECF No. 144-1, at 4, ¶ 23; ECF No. 150-1, at 4, ¶ 23. The Notice of Assignment was signed by Mr. Nathan for Xynergy and Mr. José R. Rivera Barrera for Geodata on February 20, 2014. ECF No. 144-11. On February 20, 2014, Geodata and Xynergy sent the Municipality the Notice of Assignment. ECF No. 144-11. The Notice of Assignment informed the Municipality that Geodata assigned its present and future accounts receivable to Xynergy and instructed the Municipality to remit all payments for Geodata's accounts receivable to Xynergy until notified otherwise by Xynergy only. Id.

On February 25, 2014, Geodata and Xynergy entered into the Master Agreement.[2] ECF No. 144-1, at 4, ¶ 26; ECF No. 150-1, at 5, ¶ 26. The Municipality is not a party to the Master Agreement nor took part of any covenanted negotiations. ECF No. 144-1, at 5, ¶ 27; ECF No. 150-1, at 5, ¶ 27. The payment process set forth in the Master Agreement established that for each account sold Xynergy would pay an initial down payment to Geodata. The initial down payment consisted of the advance rate percentage stated on the term sheet of the net realizable amount of each account. ECF No. 144-10, at 1, ¶ 2(a). The initial down payment was set at 80% of the expected net realizable amount in each of the term sheets agreed to by Geodata. ECF No. 144-10, at 22, ¶ 4; ECF No. 144-10, at 24, ¶ 4; ECF No. 144-10, at 27, ¶ 4; ECF No. 144-10, at 30, ¶ 4. The net realizable amount of an account consisted of 100% of the gross amount that

---

[2] Geodata proffered the Master Agreement as an exhibit to its motion for summary judgment. See ECF No. 144-10. Geodata, however, omitted page 2 and page 22 of the Master Agreement. Compare ECF No. 144-10 with ECF No. 142-10, ECF No. 143-10, and ECF No. 146-9.

Geodata billed to the Municipality. See ECF No. 142-10, at 22; ECF No. 143-10, at 22; ECF No. 146-9, at 22.[3]

 After Xynergy paid the initial down payment to Geodata, Xynergy would be entitled to accrue discount fees of 0.1% per day of the net realizable amount of the purchased account until Xynergy received payment of the net realizable amount due on the purchased account from the Municipality. ECF No. 144-1, at 5, ¶ 28; ECF No. 150-1, at 5, ¶ 28; ECF No. 144-10, at 1, ¶ 2; ECF No. 144-10, at 22, ¶ 4; ECF No. 144-10, at 24, ¶ 4; ECF No. 144-10, at 27, ¶ 4; ECF No. 144-10, at 30, ¶ 4. After Xynergy received payment on the purchased account from the Municipality, Xynergy was required to make a second payment to Geodata to complete the purchase price set forth in the Master Agreement. ECF No. 144-10, at 1, ¶ 2. The second payment consisted of the net realizable amount of the account minus the initial down payment, any deducted expenses, and the discount fees. ECF No. 144-10, at 1, ¶ 2(a).

 On or about December 31, 2017, Geodata entered into a full reconciliation of Xynergy's accounts, together with payments made by the Municipality, in accordance with required auditing procedures which comprised an annual reconciliation of accounts, including those with Xynergy. ECF No. 144-1, at 5, ¶ 32; ECF No. 144-7, at 3, ¶ 17. In or about March 2018, Geodata initiated a comprehensive reconciliation of its accounts receivable with the Municipality. ECF No. 144-1, at 6, ¶ 33; ECF No. 144-7, at 3, ¶ 17.

---

[3] The court cited to the Master Agreement proffered in three separate motions for summary judgment because the Master Agreement proffered by Geodata does not include Page 22 of the Master Agreement which is necessary to explain the payment structure of the Master Agreement. One of these motions is Xynergy's request for summary judgment to be entered against Geodata, a motion that Geodata did not oppose in a timely manner. See ECF Nos. 142, 154, 165.

IV.    **Legal Analysis**

   **A. Whether Geodata is Precluded from Bringing Claims That Have Already Been
      Dismissed**

Geodata's counterclaim listed five causes of action that were identified in the pleadings

as: (1) a request for declaratory judgment (ECF No. 105, at 22-24, ¶¶ 35-40); (2) a petition for

injunctive relief (ECF No. 105, at 24, ¶¶ 41-42); (3) a declaration that the Master Agreement is

null and void and a request of reimbursement in the amount of approximately $1,985,000.00

(ECF No. 105, at 24-26, ¶¶ 43-48); (4) an alleged breach of contract (ECF No. 105, at 27-29,

¶¶ 49-53; and (5) an alleged breach of fiduciary duties (ECF No. 105, at 28-29, ¶¶ 29-33).

As stated earlier, the court dismissed Geodata's dolo claim with prejudice as well as its

claims for declaratory judgment, injunctive relief, and breach of fiduciary duties because they

relied on the same flawed arguments as the dolo claim. ECF No. 135, at 6-7. Consequently,

Geodata's only remaining cause of action is its breach of contract counterclaim. In its motion for

summary judgment, however, Geodata rehashes arguments for claims that have already been

dismissed. First, Geodata claims that the transaction in the Master Agreement was a loan and that

Xynergy engaged in the financial intermediation business without first obtaining a license issued

by OCIF. ECF No. 144, at 15, 22. Geodata alleges that Mr. Nathan made representations that

caused it to "comprehend that Xynergy was duly authorized to provide financial services in the

Commonwealth of Puerto Rico." ECF No. 144-1, at 3, ¶ 13. Geodata further alleges that

"Xynergy and Mr. Nathan intentionally breached the obligations of good faith and fair dealings"

and that "[w]ithout the assertions made by Mr. Nathan when the services were offered, [Geodata]

[would] not have entered into the [Master Agreement]." ECF No. 144, at 18-19. Thus, Geodata

argues that the Master Agreement was null and void *ab initio* and that it is entitled to all intended

consideration that was retained by Xynergy in the amount of approximately $1,984,000. Id. at 24-25. Furthermore, Geodata alleges again that its dolo claim was presented on time. Id. at 23. Xynergy contends that Geodata is making arguments and asking for remedies "based on matters already dismissed with prejudice by this Court." ECF No. 150, at 3.

Dismissals under Federal Rule of Civil Procedure 12(b)(6) are dismissals on the merits. See Federated Dept' Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981) ("The dismissal for failure to state a claim under Federal Rules of Civil Procedure 12(b)(6) is a judgment on the merits."); AVX Corp. v. Cabot Corp., 424 F.3d 28, 30 (1st Cir. 2005) ("[A] dismissal for failure to state a claim is treated as a dismissal on the merits, and there is abundant case law to this effect."); Acevedo-Villalobos v. Hernandez, 22 F.3d 384, 388 (1st Cir. 1994) ("A dismissal for failure to state a claim under Fed.R.Civ.P. 12(b)(6) is a decision on the merits."). Therefore, because all of Geodata's claims were dismissed with prejudice with the exception of its breach of contract counterclaim, the court's analysis of the pending motion for summary judgment is limited to the breach of contract counterclaim.[4] See AVX Corp., 424 F.3d at 30.

---

[4] Geodata's "dolo" claim was dismissed with prejudice as time barred. See ECF No. 135. The counterclaim, the motion to dismiss, and the opposition to said motion do not mention the existence of any amendment in 2015 to the Master Agreement. In any event, the counterclaim does not explicitly allege contractual deceit in the process of agreeing to the amendment in 2015, as opposed to the original Master Agreement executed in February 2014. Even assuming that Geodata's "dolo" claim was not dismissed, it, as well as the argument that the Master Agreement was null and void *ab initio*, would still fail on the merits if they were evaluated under the summary judgment standard because an examination of the contract between Geodata and Xynergy reveals that it was for the sale of accounts receivable. Courts consider a common set of elements in determining whether a particular transaction constitutes a sale or a loan. In re Burm, 554 B.R. 5, 17 (Bankr. D. Mass. 2016). These factors include (1) the intent of the parties; (2) whether the seller's creditors are notified that payments are to be made to the buyer of the accounts and/or whether the buyer takes responsibility for account collection, and (3) whether the transaction is non-recourse. Id. In the case at hand, the Master Agreement emphasizes that the parties "hereunder exclusively and solely engage in the purchase and sale of Accounts, and that none of these transactions constitute a lending arrangement or a loan." ECF No. 144-10, at 15, ¶ 16(r). Second, the Master Agreement states that Geodata "shall take all necessary and appropriate steps, including the sending of a notice to Third Party Obligors of Non-Governmental Accounts . . . to assure that all proceeds paid with respect to all Non-Governmental Accounts . . . be sent exclusively to the Purchaser Lockbox." Id. at 3, ¶ 4.2(a). Thus, per the terms of the contract, Geodata was to instruct the Municipality to send payments directly to Xynergy. Third, neither party has brought to the attention of the court any portion of the Master Agreement to show that it was recourse.

**B. Geodata's Breach of Contract Counterclaim**

Geodata's remaining cause of action is its breach of contract counterclaim. In the counterclaim, Geodata alleges that Xynergy wrongfully charged it "in-excess fees and discounted payments for invoices not subject to intended purchasing covenants." ECF No. 105, at 27, ¶ 53. "Under Puerto Rico law, a claim for breach of contract has three elements: (1) a valid contract; (2) a breach by one of the parties to the contract; and (3) resulting damages." Yacht Caribbean Corp. v. Carver Yacht LLC, 270 F. Supp. 3d 547, 555 (D.P.R. 2017). "Puerto Rico law makes clear that contracts shall be binding, regardless of the form in which they were executed, 'provided the essential conditions required for their validity exist.'" Markel American Ins. Co. v. Díaz-Santiago, 674 F.3d 21, 31 (1st Cir. 2012) (citing 31 L.P.R.A. § 3451).

> Where the terms of a contract are clear, leaving no doubt as to the contracting parties' intentions, such contract will be observed according to "the literal sense of its stipulations." It is widely accepted that "[o]bligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations."

Id. (citing 31 L.P.R.A. §§ 3471, 2994).

"The Puerto Rico Supreme Court has held that '[w]hen the breach of a contractual obligation causes harm to any of the contracting parties, an action for damages for breach of contract lies.'" Redondo Const., Co. v. Izquierdo, 929 F. Supp. 2d 1, 12 (D.P.R. 2012) (quoting

---

Geodata argues that the Master Agreement is null and void *ab initio* and that Xynergy engaged in contractual deceit ("dolo") because Xynergy did not have the certificate from the Puerto Rico Department of State to do business in Puerto Rico. But a sale of accounts receivable is an acquisition of debts owed to Geodata, and thus, does not constitute doing business in Puerto Rico under Puerto Rico's General Corporation Law. 14 L.P.R.A. §§ 3803, 3805(a). Likewise, Geodata claims that the Master Agreement is null and void *ab initio* and that Xynergy engaged in contractual deceit because it did not have a license issued by the Puerto Rico Commissioner of Financial Institutions pursuant to 7 L.P.R.A. § 1071. But the uncontroverted evidence on the record is that Xynergy was not lending money to Geodata, but rather purchasing accounts receivable. Therefore, Xynergy did not need a license from the Puerto Rico Commissioner of Financial Institutions as it was not engaged in granting loans or providing consulting or financing brokerage services to Geodata. In conclusion, under the summary judgment standard, both the null *ab initio* and "dolo" claims are untenable, and thus, dismissed with prejudice.

Soc. de Gananciales v. Vélez & Asoc., 98 P.R. Offic. Trans. 54 (P.R. 1998)); Markel American Ins. Co., 674 F.3d at 31 ("Where a party fails to uphold or abide by the contract's essential obligations, such failure will be deemed a breach of the contract."). "When a party breaches a contract, it 'is liable to the aggrieved party for damages which were foreseen or may have been foreseen.'" Redondo Const., Co., 929 F. Supp. 2d at 12 (quoting Oriental Fin. Group, Inc. v. Fed. Ins. Co., 483 F. Supp. 2d 161, 165 (D.P.R. 2007)). "In pure breach of contract actions, remedies are generally limited to the remedies provided in the contract." Id. (citing P.R. Aqueduct & Sewer Auth. v. Constructora Lluch, 169 F.3d 68, 79 (1st Cir. 1999)).

Xynergy contends that Geodata waived its breach of contract counterclaim by not addressing it in its motion for summary judgment. ECF No. 150, at 3-4. Xynergy alleges that "Geodata's counterclaim incorporated a cause of action for an alleged breach of contract, for which no monetary value was identified, nor any remedy of that nature claimed. Now, Geodata is moving this Court to enter summary judgment in its favor without incorporating any discussion, argument, evidence, or request in support of that particular cause of action." Id. at 4.

Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment." See Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).

> This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party. The court need not decide whether the moving party has satisfied its ultimate burden of persuasion until the Court finds that the moving party has discharged its initial burden of production.

Id. at 330-31. "The initial burden of production imposed on the moving party is to make a *prima facie* showing that it is entitled to summary judgment and, where it is the moving party who will have the burden of persuasion at trial, the motion must be supported by credible evidence 'that would entitle it to a directed verdict if not uncontroverted at trial.'" Sierra Pérez v. United States, 779 F. Supp. 637, 641 (D.P.R. 1991) (quoting Celotex Corp., 477 U.S. at 331).

In the pending motion for summary judgment, Geodata recites a statement of law regarding breach of contract but sets forth no developed argumentation related to breach of contract. ECF No. 144, at 12-13. Geodata is completely silent regarding which terms of the Master Agreement were allegedly breached, the specific procedures in the Master Agreement for resolving disputes that arise under the contract, and what remedy it is owed from Xynergy.

Furthermore, in its prayer for relief in the motion for summary judgment, Geodata requests that the Court "declare the absolute nullity of the Factoring Agreement, to grant the absolute release for the Municipality of any obligation in such pursuance, and to enter a summary judgment in its favor and any further relief as this Court deems appropriate." ECF No. 144, at 25. Geodata's prayer for relief does not request a specific remedy for its alleged breach of contract counterclaim. Thus, Geodata has not made a *prima facie* showing that it is entitled to summary judgment. See Sierra Pérez, 779 F. Supp, at 641. Thus, Geodata's request that summary judgment be granted in its favor is DENIED.

Having denied Geodata's motion for summary judgment, the issue now is whether Geodata has waived its breach of contract counterclaim by failing to adequately address it as part of its summary judgment motion. "The law in this circuit is crystalline: a litigant's failure to explicitly raise an issue before the district court forecloses that party from raising the issue for the first time on appeal. This rule applies with equal force to situations where a plaintiff properly

12

raises an issue in his complaint, but then fails to adequately address it as part of his summary judgment argument." Rocafort v. IBM Corp., 334 F.3d 115, 121 (1st Cir. 2003); Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667, 678 (1st Cir. 1995) ("Even an issue raised in the complaint but ignored at summary judgment may be deemed waived. 'If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.'" (citing Vaughner v. Pulito, 804 F.2d 873, 877 n.2 (5th Cir. 1986))). "[C]ourts are also entitled to expect represented parties to incorporate all relevant arguments in the papers that directly address a pending motion." CMM Cable Rep., Inc. v. Ocean Coast Properties, Inc., 97 F.3d 1504, 1526 (1st Cir. 1996).

In the case at hand, Geodata has failed to adequately address its breach of contract counterclaim in the motion for summary judgment. In the counterclaim, Geodata alleges that Xynergy charged Geodata "in-excess fees and discounted payments for invoices not subject to intended purchasing covenants. And, withheld moneys from payments from the Municipality in favor of the balancing accounts of ordering Plaintiff [Xynergy] and Cross-Defendants." ECF No. 105, at 27-28, ¶ 53. However, in its motion for summary judgment, Geodata has not identified the invoices that it alleges were not subject to the intended purchasing covenants. Geodata has also offered no explanation or cited to any evidence as to why the invoices were not subject to purchasing covenants. Geodata's failure to incorporate any discussion or argument on these issues in the motion for summary judgment dooms its breach of contract counterclaim. Thus, Geodata has waived its breach of contract counterclaim which is DISMISSED WITH PREJUDICE.

Even assuming arguendo that Geodata did not waive its breach of contract counterclaim, "district courts possess the power to grant summary judgments on their own initiative." Leyva v.

On The Beach, Inc., 171 F.3d 717, 718 (1st Cir. 1999); Sadlowski v. Benoit, Civ. No. 02-1365, 2003 WL 1702017, at *5 (1st Cir. 2003) ("It is apodictic that trial courts have the power to grant summary judgment sua sponte." (citing Rogan v. Menino, 175 F.3d 75, 79 (1st Cir. 1999))). "If the summary judgment movant 'has had an adequate opportunity to show that there is a genuine issue and that his opponent is not entitled to judgment as a matter of law,' the Court may enter summary judgment in the non-movant's favor *sua sponte*." Direnzo Towing & Recovery, Inc. v. Owner-Operator Indep. Drivers Ass'n. Inc., Civ. No. 16-10073, 2018 WL 1940310, at *4 (D. Mass. Mar. 9, 2018) (quoting Nat'l Expositions, Inc. v. Crowley Maritime Corp., 824 F.2d 131, 133-34 (1st Cir. 1987)); Banco de Brasil, S.A. v. 275 Washington Street Corp., 889 F. Supp. 2d 178, 187 (D. Mass. 2012) ("the law in the First Circuit is well established that a party that moves for summary judgment runs the risk that the court may grant summary judgment *sua sponte* against the movant.").

"[A] district court may grant summary judgment *sua sponte* to a nonmoving party provided two criteria are met." LSDP 15, LLC v. EAC Organics, Inc., Civ. No. 17-10333, 2018 WL 491660, at *3 (D. Mass. Jan. 19, 2018).

> First the discovery process must be sufficiently advanced that the parties have enjoyed a reasonable opportunity to glean the material facts. Second, the district court must provide the targeted party appropriate notice and a chance to present its evidence on the essential elements of the claim or defense.

Sanchez v. Triple-S Management Corp., 492 F.3d 1, 7 (1st Cir. 2007) (citations omitted). "Notice in this context means that the losing party had reason to believe the court might reach the issue and received a fair opportunity to put its best foot forward, such that the targeted party has an adequate opportunity to dodge the bullet." LSDP 15, LLC, 2018 WL 491660, at *3; Nat'l Expositions, Inc., 824 F.2d at 133 (explaining that notice "does not mean that [a party] had to

receive a formal document called 'notice' or that the district court had to say the words 'you are

on notice' . . . Rather, the question is whether, given the procedural circumstances of the case,

the original movant has had an adequate opportunity to show that there is a genuine issue and

that his opponent is not entitled to judgment as a matter of law.").

In the case at hand, the first condition is satisfied because discovery had proceeded to the

point where the parties understood the material facts at issue. The discovery phase had already

concluded before the filing of the pending motion for summary judgment. See ECF Nos. 61, 108,

118. Penobscot Indian Nation v. Key Bank of Me., 112 F.3d 538, 562 (1st Cir. 1997) (finding

first condition satisfied where "parties had compiled a voluminous record that included

depositions of all the parties involved" in event giving rise to claims). The second condition,

notice, is also satisfied. Geodata had sufficient reason to believe the court might reach the issue

of its breach of contract counterclaim because Geodata cited case law regarding breach of

contract in the pending motion. ECF No. 144, at 12-13. Geodata had an adequate opportunity to

present non-conclusory arguments and evidence on the essential elements of its breach of

contract counterclaim but it failed to do so. Geodata did not identify the specific terms of the

Master Agreement that were allegedly breached nor requested a remedy in its prayer for relief

for its breach of contract counterclaim.

The only evidence in support of Geodata's breach of contract counterclaim is a

declaration under penalty of perjury by Mr. Fermín M. Francinetti Rivas, Co-President and

Principal Executive Officer of Geodata, stating that "[t]he reconciliation performed by [Geodata]

from the services provided by Xynergy offered evidence of in-excess fees charged and deducted

from payments for invoices not subject to the purchasing covenants in the amount of

approximately $1,573,747.24." ECF No. 144-7, at 3, ¶ 18. However, as stated earlier, Geodata

has not proffered any details or evidence regarding these invoices mentioned by Mr. Francinetti. If Geodata is referring to the Disputed Invoices in Xynergy's motion for summary judgment against Geodata (ECF No. 142), it has already been determined that Xynergy is entitled to the payment of discount fees on those invoices. See ECF No. 196. If Geodata is referring to all of the invoices that were sold to Xynergy and is arguing that Xynergy improperly deducted payments because the Master Agreement is null and void or the result of contractual deceit, that claim has already been considered and dismissed. See ECF No. 135; *supra* fn. 4. Mr. Francinetti's declaration under penalty of perjury, without more, is insufficient and conclusory by itself to show that there is a genuine issue of fact. Geodata's failure to identify the invoices and articulate why the invoices were not subject to purchasing covenants precludes it from showing that Xynergy is not entitled to judgment as a matter of law. See Nat'l Expositions, Inc., 824 F.2d at 133.

### C. Geodata's Request for a Grant of Release to the Municipality

Lastly, Geodata argues that the "transfer of the accounts receivable with the Municipality of San Juan to Xynergy is unenforceable because the [Master Agreement] . . . is null and void." ECF No. 144, at 23. Thus, in its prayer for relief, Geodata requests that the court "grant the absolute release for the Municipality of any obligation in such pursuance." Id. at 25. Xynergy, on the other hand, contends that Geodata is precluded from asking the Municipality to be released from any obligation because that remedy was never requested in the counterclaim. ECF No. 150, at 5. Geodata's counterclaim did not request that the Municipality be released from its obligations under the Notice of Assignment and Master Agreement. ECF No. 105. To the extent that Geodata is arguing that the Municipality should be released because the Master Agreement is null and void or the product of contractual deceit, that argument is without merit and said

16

claim was dismissed with prejudice. <u>See</u> ECF No. 135, at 6-7; *supra* fn. 4. Therefore, Geodata's request that the Municipality be released from any of its obligations is DENIED.

**V.      Conclusion**

For the foregoing reasons, Geodata's motion for summary judgment on the counterclaim against Xynergy (ECF No. 144) is DENIED. Geodata's breach of contract counterclaim is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 29th day of January, 2021.

<u>s/Marcos E. López</u>
U.S. Magistrate Judge

17