# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| XYNERGY HEALTHCARE CAPITAL II LLC,<br><br>Plaintiff,<br><br>v.<br><br>MUNICIPALITY OF SAN JUAN, et al.<br><br>Defendants. | CIVIL NO.: 18-1208 (MEL) |

## OPINION AND ORDER

### I.  Procedural Background

Pending before the court is the Municipality of San Juan's "Motion for Reconsideration of Opinion and Order pursuant to Rule 59(e) of the Federal Rules of Civil Procedure." ECF No. 212. On August 16, 2018, Xynergy Healthcare Capital II LLC ("Xynergy") filed an amended complaint against the Municipality of San Juan ("the Municipality" or "MSJ") and GEODATAPR International, Inc. ("Geodata"). ECF No. 20. In the amended complaint, Xynergy alleges that Geodata is liable to Xynergy for breach of contract damages under the Healthcare Receivables Master Purchase and Sale Agreement ("Master Agreement"). Id. at 11-12, 15-16. It is also alleged by Xynergy that it has a valid and enforceable security interest over all assets of Geodata. Additionally, Xynergy seeks a declaratory judgment that the Municipality and Geodata are jointly and severally liable for certain unpaid payment obligations under the Master Agreement and Chapter 9 of Title 19, Annotated Laws of Puerto Rico, Section 2211, et. seq. ("the Commercial Transactions Act"). Id. at 11, 15-16.

On October 10, 2019, Xynergy filed a motion for summary judgment against the Municipality. ECF No. 143. On October 11, 2019, the Municipality filed a cross motion for

summary judgment against Xynergy. ECF No. 146. On January 29, 2021, the court determined that the Municipality is liable to Xynergy in the amount of $1,019,499.19 for its failure to discharge its payment obligations regarding the Disputed Invoices. ECF No. 198, at 34. The court also determined that

> Xynergy has a valid and enforceable security interest in all the Collateral as defined in the Healthcare Receivables Master Purchase and Sale Agreement (ECF Nos. 142-10, 143-10, 144-10, ECF No. 146-9) to secure Geodata's Obligations under said agreement, including any invoiced amounts due to Geodata from the Municipality. Consequently, the Municipality is ORDERED to pay Xynergy any invoiced amount due to Geodata, until all the amounts owed to Xynergy by Geodata are paid.

ECF No. 200. The Municipality's request that its motion for summary judgment be granted in its favor was denied. ECF No. 199. In the motion for reconsideration pending before the court, the Municipality requests that its motion for summary judgment be granted in its favor and that Xynergy's complaint against it be dismissed. ECF No. 212.

**II.     Legal Standard**

"The Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration of interlocutory orders." Vega v. Hernández, 381 F. Supp. 2d 31, 35 (D.P.R. 2005). "Notwithstanding, any motion seeking the reconsideration of a judgment or order is considered as a motion to alter or amend a judgment under Fed.R.Civ.P. 59(e), if it seeks to change the order or judgment issued."[1] González-Camacho v. Banco Popular de Puerto Rico, 318 F. Supp. 3d 461, 511 (D.P.R. 2018) (citations omitted); Vega, 381 F. Supp. 2d at 35 ("A motion for reconsideration of an order to grant [or deny] summary judgment is treated as a motion under Rule 59(e) of the Federal Rules of Civil Procedure").

---

[1] Federal Rule of Civil Procedure 59(e) provides "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

2

Motions for reconsideration "are entertained by courts if they seek to correct manifest errors of law, present newly discovered evidence, or when there is an intervening change in law." Pineiro v. Oriental Group, 734 F. Supp. 2d 239, 241 (D.P.R. 2010) (citing Prescott v. Higgins, 538 F.3d 32, 45 (1st Cir. 2008)). "Moreover, Rule 59(e) motions cannot be used 'to raise arguments which could have been raised prior to the issuance of the judgment [or order].'" Vega, 381 F. Supp. 2d at 35 (citing Pacific Ins. Co. v. Am. Nat'l. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998)). "Neither are Rule 59(e) motions appropriate 'to repeat old arguments previously considered and rejected.'" Trabal Hernández v. Sealand Servs., Inc., 230 F. Supp. 2d 258, 259 (D.P.R. 2002) (quoting Nat'l Metal Finishing Co., Inc. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990)). "Hence, motions for reconsideration are 'extraordinary remedies which should be used sparingly' and are 'typically denied.'" Vega, 381 F. Supp. 2d at 35 (citations omitted).

### III.   Legal Analysis

#### A. Repeated Arguments

In its motion for reconsideration, the Municipality repeats various arguments that were already determined to be without merit at the motion for summary judgment stage. First, the Municipality argues that the Notice of Perpetual Assignment and Change of Payee ("Notice of Assignment") was ineffective because it did not comply with Regulation No. 8873. ECF No. 212, at 3. The Municipality also argues that assignments were prohibited in its service contract with Geodata. Id. at 9. Next, it is claimed by the Municipality that even if the Notice of Assignment was deemed effective, it could only affect the contract between Geodata and the Municipality that was in full force on February 20, 2014 when the Notice of Assignment was received. Id. at 14. The Municipality claims that the Disputes Invoices were "Governmental

Accounts" under the Master Agreement, and thus, it was not obligated to make payments to Xynergy. Id. at 15. Geodata, the Municipality argues, should be liable "to pay the totality of any possible debt" because of a hold-harmless clause in their service contract. Id. at 18. The Municipality also contends that Chapter 9 of the Commercial Transactions Act ("Chapter 9") does not apply to the Master Agreement. Id. at 3. Lastly, the Municipality argues that it is not liable to Xynergy because it already discharged the amounts due on the Disputed Invoices by paying said amounts to Geodata. Id. at 18.

These arguments were already considered and deemed unpersuasive at the motion for summary judgment stage. See ECF No. 198, at 16 fn.5, 19, 20, 27-34; ECF No. 199, at 19-28. The Municipality has not presented any new evidence or an intervening change in law that support these arguments. Therefore, these arguments need not be reevaluated at this juncture. See Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (affirming district court's decision to deny motion for reconsideration because it "did no more than reiterate the arguments [the plaintiff] earlier had advanced."); Torres v. González, 980 F. Supp. 2d 143, 148 (D.P.R. 2013) ("The argument in the [motion for reconsideration] repeats and tracks the arguments that was already raised and rebuffed, and so the Court has no choice but to reject this recycled argument."); Sánchez Rodríguez v. Departamento de Correción y Rehabilitación, 537 F. Supp. 2d 295, 297 (D.P.R. 2008) ("this vehicle may not be used by the losing party 'to repeat old arguments previously considered and rejected, or to raise new legal theories that should have been raised earlier.'" (citations omitted)).

**B. The Notice of Assignment**

The Municipality argues that the Notice of Assignment is ineffective because it preceded the Master Agreement.[2] ECF No. 212, at 10. The Notice of Assignment is dated February 20, 2014 whereas the Master Agreement is dated February 25, 2014. ECF No. 146-9; ECF No. 146-11. The Municipality's contention that the Notice of Assignment is ineffective, however, cannot prosper because the Notice of Assignment specifically indicated that it applied to Geodata's "present and future accounts receivable." ECF No. 146-11. The Notice of Assignment also instructed the Municipality to "remit all payments for all accounts receivable from Geodata payable to [Xynergy] and to do so until notified otherwise by [Xynergy] only." Id. The mere fact that the Notice of Assignment preceded the Master Agreement is inconsequential because the Notice of Assignment applied to future accounts receivable, and thus, included the accounts assigned pursuant to the Master Agreement. To the extent that the Municipality is arguing that it should have received a new notice of assignment after the Master Agreement was executed, such argument cannot be sustained because the Notice of Assignment applied to Geodata's present and future accounts receivable. ECF No. 146-11; see Marine Nat. Bank v. Airco, Inc., 389 F. Supp. 231, 233 (W.D. Pa. 1975) ("To require secured parties to give an account debtor a second notice of an assignment . . . would obviously be impractical because it would expose the secured party to the risk in every case that the account debtor who promptly pays his bills would pay on the account to the original debtor before receiving the notice. The secured party has no reliable means of knowing when such a contract right becomes an account so as to send timely notice.").

---

[2] The Municipality did not raise this argument at the motion for summary judgment stage. "Rule 59(e) motions cannot be used 'to raise arguments which could have been raised prior to the issuance of the judgment.'" Villanueva-Mendez v. Nieves Vázquez, 360 F. Supp. 2d 320, 324 (D.P.R. 2005) (citations omitted). However, this matter will be addressed in an abundance of caution.

Furthermore, "[o]nce an account debtor has notice of an assignment, if it has any questions, standard Uniform Commercial Code principles require the account debtor to contact the assignee for clarification. It cannot simply stop paying the assignee without asking." Rosemount Global Trade Finance Fund, L.P. v. AJC Int'l, Inc., Civ. No. 11-112, 2011 WL 13217820, at *5 (N.D. Ga. Oct. 25, 2011); see Greenfield Commercial Credit, L.L.C. v. Catlettsburg Refining, L.L.C., Civ. No. 03-3391, 2007 WL 97068, at *3 (E.D. La. Jan. 9, 2007) ("when an account debtor . . . doubts the adequacy of the notice of assignment, the onus is on it to contact the assignee—not the assignor—concerning the alleged insufficiency of the notice."); King v. Tuxedo Enterprises, Inc., 975 F. Supp. 448, 453 (E.D.N.Y. 1997) ("If the account debtor doubts the adequacy of the notification or the validity of the assignment, he or she may not disregard the notice, but must request the assignee to furnish reasonable proof that the assignment has been made."). The Municipality has not cited to any record evidence indicating that it contacted Xynergy for clarification regarding the Notice of Assignment.

In fact, after the Municipality received the Notice of Assignment, in relation to the services rendered by Geodata to the Municipality, the Municipality paid to the order of both Geodata and Xynergy the amount of $18,668,682.62. ECF No. 151-2, at 3, ¶ 8. See Rosemount Global Trade, 2011 WL 13217820, at *4 (explaining that "[s]tandard contract law would prevent [an account debtor] from challenging the notification of the assignment's sufficiency once it has accepted the notification and in particular, after it has made several payments. . ."); Florida First Nat. Bank v. Fryd Constr. Corp., 245 So. 2d 883, 886 (Fla. Ct. App. 1971) ("Having agreed by his actions as to the binding effect of the notice he may not at this date disavow the notice and label his own actions as illegal.").

6

The Municipality argues that "[o]n March 5, 2021, the Supreme Court of Puerto Rico published case of PR Asset Portfolio 2013-1 International, LLC v. Tropical Heifers, Inc y Otros, 2021 TSPR 30, ruling that both then applicable Commercial Transactions Act and its current iteration requires the prior execution of a Security Agreement for the assignment to attach." ECF No. 219, at 1; ECF No. 227-1. According to Chapter 9, "[a] security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment." 19 L.P.R.A. § 2233(a). Furthermore, a security interest is enforceable against the debtor and third parties with respect to the collateral only if: (1) value has been given, (2) the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party, and (3) the debtor has authenticated a security agreement that provides a description of the collateral. See 19 L.P.R.A. § 2233(b).

The Notice of Assignment, by itself, is insufficient for Xynergy to demand payment on the Disputed Invoices from the Municipality. See Durham Commercial Capital Corp. v. Select Portfolio Servicing, Inc., Civ. No. 14-877, 2018 WL 2017531, at *2 (M.D. Fla. May 1, 2018) (explaining that "[i]f [assignee] did not purchase a particular account, it would not be entitled to payment from [account debtor] notwithstanding [account debtor's] receipt of the Notice of Assignment."). Xynergy, however, is not merely relying on the Notice of Assignment for payment of the Disputed Invoices because it entered into the Master Agreement with Geodata. ECF No. 146-9. The Master Agreement is a valid security agreement that was entered into on February 25, 2014, well before the accrual of the Disputed Invoices which are dated between March 7, 2017 and March 1, 2018. ECF No. 146-9; ECF No. 143-1, at 3, ¶ 12; ECF No. 143-1, at 8-9, ¶ 33. The record evidence reflects that in relation to the Disputed Invoices, Xynergy paid to Geodata the aggregate amount of $815,119.35 via wire transfer to Geodata's bank account.

ECF No. 143-1, at 9-10, ¶ 34; ECF No. 143-25, at 6-15, ¶¶ 15, 17, 19, 21, 23, 25, 27, 29, 31, 33, 35, 37, 39, 41, 43, 45. Thus, the Municipality's contention that there was not a valid assignment due to the absence of a security agreement cannot flourish.

**C. Estoppel**

The Municipality argues that it is not liable to Xynergy for the amounts of the Disputed Invoices because the doctrine of estoppel is inapplicable to a government entity when it acts in the public interest. ECF No. 212, at 11-14. The Notice of Assignment was null and void, the Municipality claims, because it did not adhere to the requirements of Regulation No. 8873 that it be signed by a public notary, and thus, Xynergy was never entitled to receive payments on the Disputed Invoices. Id. at 14. Hence, the Municipality argues that it cannot be estopped from mending its legal error by not paying the amount of the Disputed Invoices to Xynergy.

"[T]he Puerto Rico Supreme Court has been redefining the application of 'public interest' or 'public policy' and has upheld an exception to the estoppel principle: that estoppel can be invoked against the government if an end that does not contravene public policy would result. That is to say, if public policy would not be violated by the application of estoppel, then estoppel can be successfully raised against the government." Suarez Cestero v. Pagan Rosa, 198 F. Supp. 2d 73, 82 (D.P.R. 2002) (citing Mendoza Aldarondo v. Asociación de Empleados, 94 P.R. Dec. 564, 578 (P.R. 1967)); Infante v. Tribunal Examinador de Médicos, 84 P.R. Dec. 308, 316 (P.R. 1961)); see Núñez Colón v. Toledo Davila, 648 F.3d 15, 19 (1st Cir. 2011) ("Puerto Rico courts have declined to apply collateral estoppel when doing so would defeat the 'ends of justice, especially if reasons of public policy are involved.'" (citing Bonafont Solís v. Am. Eagle, Exec. Airline, Inc., 1997 P.R. Eng. 423416, 1997 WL 423416 (P.R. 1997))).

The Municipality's contention that estoppel may not be raised against it because it was acting in the public interest by not paying the Disputes Invoices to Xynergy is without merit. The Municipality's argument relies on the unfounded premise that the Notice of Assignment was ineffective because it did not comply with Regulation No. 8873. It has already been determined, in resolving the motions for summary judgment, that the Notice of Assignment need not comply with the requirements of Regulation No. 8873. See ECF No. 199, at 19. Thus, the Municipality's contention that estoppel may not be raised against it is doomed.

**D. Dual Compensation**

Lastly, the Municipality argues that "it is unquestionable that this [Court] made a practical mistake by determining that Xynergy is entitled to the payment of the repurchase price of the Disputed Invoices from Geodata in the amount of $815,119.35, and at the same time, making the Municipality liable for an additional $1,019,499.19, in payment for the same disputed invoices." ECF No. 212, at 17. The Municipality argues that the $815,119.35 to be paid by Geodata must be deducted from the Municipality's liability otherwise Xynergy would receive dual compensation. Id.

The Municipality is liable to Xynergy in the amount of $1,019,499.19 due to its failure to uphold its obligations under Chapter 9 to pay the amount due on the Disputed Invoices to Xynergy. ECF No. 198, at 34. Geodata's liability, on the other hand, arises from its breach of the Master Agreement and it has already been determined that "Xynergy is entitled to the payment of the Repurchase Price of the Disputed Invoices from Geodata in the amount of $815,119.35 plus the amount of Xynergy's discount fees for the Disputed Invoices through the date of Geodata's repurchase of the Disputed Invoices." ECF No. 196, at 31-32. As of September 10,

9

2019, Xynergy has accrued discount fees in the total amount of $367,359.01 from the Disputed Invoices. ECF No. 196, at 22, fn.12.

Xynergy, however, would not be compensated twice. The Municipality and Geodata are jointly and severally liable in the amount of $1,019,499.19 on the Disputed Invoices. The Municipality is liable for the amount of $1,019,499.19 on the Disputed Invoices for its failure to discharge its payment obligations regarding the Disputed Invoices under Chapter 9.[3] Geodata, on the other hand, is liable to Xynergy for the amount of $1,019,499.19 on the Disputed Invoices because it owes the amount of $815,119.35 as the repurchase price of the Disputed Invoices and the amount of $204,379.84 ($1,019,499.19 minus $815,119.35) for a portion of the $367,359.01 in discount fees.

Additionally, Geodata is liable, by itself, for an additional amount of $162,979.17 in discount fees ($367,359.01 minus $204,379.84). Geodata is also solely liable for a misdirected payment penalty in the amount of $254,874.80, a prepayment penalty in the amount of $132,532.68, and attorney's fees and costs in the amount of $91,596.61. The Municipality is not liable for the additional amount of $162,979.17 in discount fees, the misdirected payment penalty in the amount of $254,874.80, the prepayment penalty in the amount of $132,532.68, and the attorney's fees and costs in the amount of $91,596.61.

In the event that Xynergy first collects $1,019,499.19 from the Municipality, Xynergy could then only collect the following amounts from Geodata: $162,979.17 in additional discount fees, a misdirected payment penalty in the amount of $254,874.80, a prepayment penalty in the

---

[3] Although the Municipality could find itself in a position where it has paid the amount of the Disputed Invoices twice, first unlawfully prior to the commencement of and during this case to Geodata and subsequently to Xynergy as a result of the judgment in this case, the Municipality did not file a third-party complaint against Geodata at the inception of the case. Moreover, once Geodata was added as a defendant in the amended complaint, the Municipality never filed a crossclaim against Geodata.

amount of $132,532.68, and attorney's fees and costs in the amount of $91,596.61. On the other hand, if Xynergy first collects $815,119.35 from Geodata on the Disputed Invoices, Xynergy would then only collect from the Municipality the amount of $204,379.84 ($1,019,499.19 minus $815,119.35) or the balance of discount fees that Xynergy has been unable to collect in executing the judgment against Geodata, whichever is less. In sum, the Municipality's contention that Xynergy would receive dual compensation cannot stand.

## IV. Conclusion

For the foregoing reasons, the Municipality's motion for reconsideration (ECF No. 212) is DENIED. Although the original judgment is clear, an amended judgment shall issue to make it evident that Xynergy is not to be compensated twice.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of July, 2021.

s/Marcos E. López  
U.S. Magistrate Judge